UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **WILLIAM ALAN MUSE** | **CIVIL ACTION NO. 3:12-cv-1762** |
| **VS.** | **SECTION P** |
| | **JUDGE JAMES T. TRIMBLE, JR.** |
| **DOUG SCHMITZ, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff William Alan Muse, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983. When he filed this complaint plaintiff was a detainee at the Ouachita Parish Corrections Center awaiting trial on drug charges lodged in the Fourth Judicial District Court, Ouachita Parish; those charges were dismissed by the District Attorney on August 27, 2012, and plaintiff was released from custody. In addition to his original complaint, plaintiff has filed five motions to amend or supplement his complaint and, in a separate order, those motions have been granted. [Doc. 18]  Plaintiff has also filed two motions for preliminary injunctive relief and a motion for a "federal probe" which have been denied in a separate order. [Doc. 18] These matters have been referred to the undersigned for review, report, and recommendation.  For the following reasons it is recommended that the complaint and the amended complaints be **DENIED** and **DISMISSED WITH PREJUDICE.**

*Background*

*1. Original Complaint*

Plaintiff filed his original complaint on June 25, 2012.  He complained that on May 22, 2012, Officers Doug Schmitz and David Knight of the Ouachita Parish Sheriff's Office (OPSO)

Metro Narcotics Unit unlawfully stopped, searched, arrested and imprisoned him and his brother in violation of his Fourth and Fourteenth Amendment rights. He also faulted OPSO Dy. B. Willis who, although he heard plaintiff's brother take responsibility for the possession of drugs, neglected to provide this information to the arresting officers. Plaintiff prayed for his immediate release from custody, compensatory and punitive damages and an injunction prohibiting further violations of plaintiff's civil rights by the three named defendants – Schmitz, Knight, and Willis.

**2. Amended Complaint [Doc. 8]**

On July 12, 2012, plaintiff filed a motion to amend his complaint. Plaintiff claimed that he filed a *pro se* petition for writ of *habeas corpus* and a motion to quash, and on June 11, 2012, Judge Rambo of the Fourth Judicial District Court ordered the District Attorney, Jerry Jones, to set the motions for hearing on July 9, 2012. On that date, the District Attorney claimed that they were not ready to arraign the petitioner or to convene the hearing on the pro se motions and obtained a continuance until July 16, 2012. According to plaintiff, this action by the D.A. deprived him of due process and amounted to the intentional infliction of emotional distress. Plaintiff moved the court to permit amendment so as to join these causes of action and D.A. Jones as a defendant.

**3. Second Amended Complaint [Doc. 9]**

On July 18, 2012, plaintiff filed another motion to amend his complaint. He alleged that he was arraigned on a charge of possession of marijuana and possession of drug paraphernalia on July 16, 2012. Plaintiff claimed that this arraignment and continued prosecution amount to malicious prosecution given the fact that plaintiff's brother had previously provided an affidavit admitting that the drugs seized at the time of plaintiff's arrest were in the sole possession of

plaintiff's brother. Plaintiff moved the court to permit amendment to add the claim of malicious prosecution with respect to D.A. Jones.

*4. Petition for Preliminary Injunction [Doc. 10]*

On July 18, 2012, plaintiff also filed a Petition for Preliminary Injunction to prohibit the D.A. from prosecuting him on the pending charges.

*5. Third Amended Complaint [Doc. 11]*

On August 9, 2012, plaintiff filed another motion to amend his complaint. Plaintiff asked that Cole Delasalle, a parole officer with the Louisiana Department of Public Safety and Corrections (LDOC) and Ms. Hammett, a supervisory and hearing officer with the LDOC be added as defendants. He claimed that on July 25, 2012, he requested a preliminary hearing which was set for July 31, 2012; however, the hearing was then rescheduled for August 3, 2012, without plaintiff's consent. According to plaintiff the hearing was convened and, based on no evidence, Ms. Hammett found probable cause to revoke parole. According to plaintiff, Delasalle had placed a parole detainer on him on May 23, 2012, and served parole violation papers on him on May 29, 2012. Plaintiff also requested that the LDOC be added as a defendant because of their custom of placing detainers on arrestees.

Plaintiff claimed that as a result of the detainer placed on him by Delasalle, he is unable to bond out of jail.

*6. Emergency Request for Federal Probe [Doc. 12]*

On August 9, 2012, plaintiff also filed an "Emergency Request for Federal Probe" requesting a court ordered investigation of the parole hearing during which a police report which was edited was read into the record.

3

*7. Emergency Petition for Preliminary Injunction [Doc. 13]*

On August 13, 2012, he filed an Emergency Petition seeking another injunction prohibiting Assistant District Attorney Kevin Johnson from continuing the criminal prosecution of the plaintiff.

*8. Fourth Amended Complaint [Doc. 14]*

On August 13, 2012, plaintiff filed yet another motion to amend his complaint.  Plaintiff accused A.D.A. Kevin Johnson of violating plaintiff's right to due process and a speedy trial and of malicious prosecution and intentional infliction of emotional distress.

*9. Memorandum Notice [Doc. 15]*

On August 21, 2012, plaintiff filed another pleading which he entitled "Memorandum Notice."  In this pleading plaintiff complained that at a hearing on August 14, 2012, A.D.A. Kevin Johnson "stated in open court that he threw [plaintiff's] brother's affidavit of fact away..." Plaintiff claims that this "... unconstitutional suppression of exculpatory evidence is a federal criminal offense..."

*10. Fifth Amended Complaint [Doc. 16]*

On September 5, 2012, plaintiff filed yet another motion to amend his complaint. In this motion he complained that on August 21, 2012, A.D.A. Brian Harkins dismissed the original charges against the plaintiff under Docket Number 12-M-2358, when the court refused to grant his motion to continue the hearing on a motion to suppress.  On August 22, 2012, he then re-instituted prosecution by filing a new bill of information under Docket Number 12-M-2909. Plaintiff requested joinder of Harkins as a defendant claiming malicious prosecution, intentional infliction of emotional distress and abuse of legal process.

*11. Notice of Change of Address [Doc. 17]*

On September 13, 2012, plaintiff advised the court of his release, his new address and submitted proof to establish that on August 27, 2012, the state dismissed the charges pending under Docket Number 12-M-2909.

*Summary of Claims and Defendants*

1. Officers Schmitz and Knight of the OPSO unlawfully stopped, searched, arrested and imprisoned plaintiff and his brother in violation of the Fourth and Fourteenth Amendments.  Dy. Willis neglected to advise Schmitz and Knight that plaintiff's brother had taken sole responsibility for the drugs that were discovered.  Plaintiff prayed for his immediate release from custody, compensatory and punitive damages and an injunction prohibiting further violations of plaintiff's civil rights by the three named defendants – Schmitz, Knight, and Willis.

2. District Attorney Jones violated plaintiff's due process rights and intentionally inflicted emotional distress when he moved to continue the hearings scheduled on July 9, 2012;  further when Jones caused plaintiff to be arraigned on  charges of possession of marijuana and possession of drug paraphernalia on July 16, 2012, that action amounted to malicious prosecution given the fact that plaintiff's brother had previously provided an affidavit admitting that the drugs seized at the time of plaintiff's arrest were in the sole possession of plaintiff's brother.

3. Parole Officer Delasalle and his supervisor Ms. Hammett violated plaintiff's due process rights by placing a parole detainer on plaintiff, by continuing the preliminary hearing from one date to another, and by ultimately determining that probable cause existed to maintain the detainer. Plaintiff also faulted the LDOC for its practice of detaining parolees who have been arrested and charged with criminal offenses.

4. A.D.A. Johnson of violated plaintiff's right to due process and a speedy trial and participated in the malicious prosecution of plaintiff and the intentional infliction of emotional distress; Johnson also engaged in the unconstitutional suppression of exculpatory evidence, namely the affidavit of plaintiff's brother. A.D.A. Harkins likewise engaged in the malicious prosecution of plaintiff when he dismissed the charges in case number 12-M-2358 and then re-instituted them in case number 12-M-2909, which amounted to malicious prosecution and the intentional infliction of emotional distress.

### *Relief Sought*

Plaintiff seeks compensatory and punitive damages and injunctions halting the prosecution and ordering his release from custody. He also seeks a "federal probe" into the parole hearing.

### *Law and Analysis*

*1. Screening*

Plaintiff was a prisoner when he filed this suit, and when he filed each of the subsequent amended complaints. He was released following the dismissal of the pending charges and he no longer remains incarcerated. When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint, and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.§§ 1915 and 1915A.

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with

the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

Nevertheless, in order to be afforded the benefits of this assumption a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97. The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint is frivolous if it lacks an arguable basis in law (i.e. it is based upon a undisputably meritless legal theory) or in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir.1995); *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993);

7

*Denton v. Herndandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

Plaintiff has filed a comprehensive original complaint and has been allowed to amend his complaint to add additional defendants and causes of action. He has stated his best case and need not be afforded further opportunities for amendment.

## 2. Injunctions – Termination of Prosecution, Release from Custody, and a Federal Probe

In addition to his prayer for compensatory and punitive damages, plaintiff has prayed for injunctions prohibiting further prosecution and directing his immediate release. He has also requested a federal investigation of the preliminary hearing convened by his parole officer.

To the extent that plaintiff sought dismissal of criminal charges pending in the Louisiana court and his immediate release from custody, such relief is not available in this proceeding. As noted above, when plaintiff filed his original and amended complaints seeking termination of the prosecution and his immediate release from custody, he was a pre-trial detainee in the custody of the Ouachita Parish Sheriff.  He filed his complaint pursuant to the provisions of 42 U.S.C. §1983. However, plaintiff challenged the constitutionality of his arrest, prosecution and continued detention and not the conditions of his confinement.

*Habeas corpus* (28 U.S.C. §§2241 or 2254) provides the appropriate remedy for a prisoner challenging his detention, conviction, or continued custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973);  *Pugh v. Parish of St. Tammany*, 875 F.2d 436, 439 (5th Cir.1989).  On the other hand, Section 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures. *See Cook  v. Texas Dep't of Crim. Justice*, 37 F.3d 166, 168 (5th Cir.1994).

The Fifth Circuit has adopted a bright-line rule for resolving whether a prisoner's claim

8

should be properly characterized as a § 1983 claim or one for *habeas* relief – if a favorable determination would not automatically entitle the prisoner to accelerated release, the proper action is a § 1983 suit. *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir.1997) (citation omitted). In this case, a favorable determination on plaintiff's requests for injunctive relief would have resulted in the termination of prosecution and his immediate release and therefore he could not obtain such relief in the context of this civil rights complaint.

Further, even if plaintiff were entitled to *habeas* relief when the complaint was filed, the relief he sought – the termination of prosecution and his immediate release – have been granted to him and therefore any claim for *habeas corpus* relief would be moot and subject to dismissal on that basis. Under Article III of the Constitution federal courts may only adjudicate actual, ongoing controversies. *Nebraska Press Assn v. Stuart*, 427 U.S. 539, 546 (1976); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). The fact that some dispute between the parties was viable when suit was filed cannot substitute for the actual case or controversy required for a court to exercise jurisdiction. *Steffel v. Thompson*, 415 U.S. 452, 459, n. 10 (1974); *Roe v. Wade*, 410 U.S. 113, 125 (1973). A case is deemed moot when there is no longer a case or controversy. *DeFunis v. Odegard*, 416 U.S. 312, 316 (1974). Thus, even if plaintiff originally stated a claim for which relief could be granted, his subsequent release following the dismissal of prosecution rendered such claim moot.

Additionally, plaintiff requests a "federal probe" or investigation of the parole hearing. Plaintiff must be aware that the Courts are not investigatory agencies. Plaintiff must address such a request to a local, state, or federal police agency. Of course, in so doing, he must additionally be aware that private citizens have no constitutional right to have their claims

9

investigated by federal or local executive officials. *See, e.g., Gomez v. Whitney*, 757 F.2d 1005 (9th Cir.1985); *Dunyan v. FBI*, 1992 WL 25777 (E.D.Pa. Feb.5, 1992); *Moses v. Kennedy*, 219 F.Supp. 762 (D.D.C.1963); see also *Hymel v. Champagne*, 2007 WL 1030207 (E.D.La. 2007) (citations omitted). To the extent that Plaintiff wants the Court to order some agency of the executive department to conduct an investigation, he fails to state a claim for which relief may be granted.

### *3. Immunity*

As shown above, plaintiff's claims for injunctive relief against any of the defendants either fail to state a claim for which relief may be granted, or, have become moot as a result the dismissal of the charges and plaintiff's discharge from custody. Plaintiff does, however seek money damages from the defendants, including District Attorney Jones and his Assistants Johnson and Harkins. Any claim for monetary damages against these three defendants is barred by the doctrine of absolute prosecutorial immunity. A district attorney, and his assistants, are absolutely immune in a civil rights suit for any action taken pursuant to their role as prosecutor in preparing for the initiation of judicial proceedings and in presenting the State's case. *See Kalina v. Fletcher*, 522 U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Esteves v. Brock*, 106 F.3d 674, 676 (5th Cir.1997).

Plaintiff's claim against these defendants is based on their role as prosecutor in plaintiff's criminal trial. Because the complained of conduct was taken in the defendants' roles as the State's advocate, they are entitled to absolute prosecutorial immunity. *See Imbler*, 424 U.S. at 430 (absolute immunity protected prosecutor from suit even for knowingly using perjured

testimony and suppressing material evidence at plaintiff's murder trial).

Further, plaintiff seeks money damages from the LDOC for its policy of placing detainers on arrested parolees. The LDOC is immune from suit under the Eleventh Amendment. *See Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313-14 (5th Cir.1999) (per curiam).

*4. Parole Violation*

Plaintiff also contends that Parole Officer Delasalle and his supervisor Ms. Hammett violated his due process rights by placing a parole detainer on him, by continuing the preliminary hearing from one date to another, and by ultimately determining that probable cause existed to maintain the detainer. The lodging of the detainer against plaintiff in connection with his alleged parole violation did not impinge a Fourteenth Amendment liberty interest. *Compare Moody v. Daggett*, 429 U.S. 78, 86-87, 97 S.Ct. 274, 278-79, 50 L.Ed.2d 236 (1976). The short delay complained of certainly did not impact plaintiff's Constitutional rights, and, the facts supplied thus far strongly by the plaintiff himself suggests that there was sufficient evidence adduced at the preliminary hearing to establish probable cause to suspect that plaintiff had violated one or more conditions of his parole. His claims against Delasalle and Hammett are frivolous.

*5. False Arrest and Imprisonment*

Read liberally, plaintiff's original complaint alleged that the three original defendants – OPSO Deputies assigned to the Metro Narcotics Unit – performed an unlawful traffic stop, then an illegal search, which then resulted in his false arrest and imprisonment. Plaintiff supplied three sources of information with regard to the factual basis of his claims, namely, his original complaint, the reports of the arresting officer, and, the purported affidavit of plaintiff's brother,

11

Barron Muse.

### A. The Traffic Stop

Plaintiff offers no reason why he was pulled over but instead claims that he was told by the officer that he was pulled over because he was observed turning into "... a church parking lot behind a white girl..." [Doc. 1, p. 4] The arresting officer claimed that he initiated the stop after he observed plaintiff's vehicle cross the double yellow center line on two occasions. [Doc. 1-2, p. 1] Plaintiff's brother, who was a passenger in the truck at the time, alleged that while they were driving the vehicle began "sputtering" and they noticed that they were out of fuel; being unfamiliar with the neighborhood, they turned around in search of a gas station. According to plaintiff's brother, they were unable to find a gas station and the truck stalled again; they noticed a black Yukon behind them with its lights on, so plaintiff pulled into the next available drive way where he was confronted by the officer and told to exit the vehicle. According to the brother, plaintiff was told that he was being pulled over because he was following "a white woman." [Doc. 1-2, p. 3]

La. C.Cr.P. art. 215.1 allows a law enforcement officer to stop a person in a public place when he reasonably suspects that the person is committing, has committed, or is about to commit an offense. The statute also permits the officer to demand the person's name, address, and an explanation of his actions. The statute also permits the pat-down of the suspect if the officer reasonably believes that he is in danger. This type of police activity has been approved by the United States Supreme Court as a valid exercise of police authority. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The pleadings and exhibits offer three possible reasons why plaintiff was initially

12

detained: (1) plaintiff claims the officer detained him because he was following a "white woman;" (2) the officer claims that he observed the plaintiff's vehicle cross the center line twice; and, (3) plaintiff's brother claims that they were in an unfamiliar neighborhood, that their vehicle, which was out of fuel, sputtered and stopped on the roadway, and that they were following a "white woman."

Clearly, taken together, the officer's report is, to a certain degree, corroborated by the brother's affidavit; both the brother and the officer suggested that the vehicle was being driven in an erratic if not dangerous manner. In other words, the officer was justified in stopping and approaching the vehicle and asking the occupants to identify themselves.

### B. Search

Thereafter, according to the plaintiff, he was told he was being detained; according to plaintiff, his brother was ordered to step out of the vehicle where he was patted down by one of the officers. According to plaintiff, the officer then advised that plaintiff's brother dropped a marijuana cigarette on the ground, and that he advised the officer that there was more marijuana in the truck. When the officer requested permission to search the vehicle, plaintiff denied consent. Plaintiff was then handcuffed and placed in the back of the patrol unit to await the arrival of a drug dog. According to plaintiff, the truck was searched after the drug dog arrived and then towed away. [Doc. 1, pp. 4-6]

According to the police reports, the officer made contact with plaintiff immediately after the vehicle stop. Plaintiff was "extremely belligerent" and the officer claimed to have detected the "faint odor of marijuana emanating from the vehicle." The officer recognized plaintiff and recalled a prior history involving drugs. The officer advised plaintiff of his *Miranda* rights and

13

plaintiff locked the doors to his vehicle. In the meantime, plaintiff's brother had exited the passenger side of the vehicle and advised the officer that he had dropped a marijuana cigarette or "blunt" on the ground. After having been advised of his *Miranda* rights plaintiff's brother showed the officer where he dropped the "blunt" and the officer seized it. Thereafter when asked if there was more contraband in the vehicle, the brother replied, "maybe." Once the drug dog alerted to the presence of drugs the officer located a bag containing 1/4 oz. of marijuana in the center console and plaintiff's brother advised the officer that he had received a call from a white female who wanted to "get high." Plaintiff denied having any knowledge of the presence of the drug in his vehicle. [Doc. 1-2, pp. 1-2]

According to plaintiff's brother's affidavit, following the traffic stop, plaintiff was directed to exit his vehicle whereupon he was immediately handcuffed and questioned while the brother remained in the truck. According to the brother, plaintiff remained cooperative and polite. Another officer asked the brother for identification, and he too was told to exit the vehicle. According to the brother, he was searched and asked whether there were any drugs in the vehicle. The brother then advised the officer that there was "... a small amount in [his] cigarette pack in the side door panel ..." Approximately 20 minutes later, the drug dog arrived, but, according to plaintiff's brother, the dog did not "alert" to the presence of drugs. Nevertheless, the vehicle was searched and the drugs found in the location described by plaintiff's brother. According to the affidavit of the brother, he advised the officers that the drugs belonged to him and that his brother, the plaintiff, had no knowledge of their existence. [Doc. 1-2, p. 3]

As noted above, once plaintiff's vehicle was stopped, the officers were justified in approaching it and in asking the occupants to identify themselves. Further, the officer alleged that

he smelled the odor of marijuana emanating from the vehicle and, averred knowledge of prior encounters with the plaintiff who had a history of drug violations. Clearly, the officer was justified in removing the occupants from the vehicle and, likewise, the pat-down search that was thereafter conducted was also justified under Art. 215.1 and *Terry, supra*. Thereafter, plaintiff's brother, by his own admission, dropped a marijuana cigarette and then told the officer what he had done. The seizure of that piece of abandoned contraband was also justified under federal Constitutional law. *California v. Hondari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

      Finally, plaintiff's brother admitted to the officers that there was an additional quantity of drugs in the vehicle. As implied by the plaintiff, the Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Thus, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580 (1991). One such exception that is "specifically established and well-delineated" is the so-called automobile exception. *United States v. Ross*, 456 U.S. 798, 825 (1982). "The automobile exception allows police to search a vehicle if they have probable cause to believe that the vehicle contains contraband." *United States v. Fields*, 456 F.3d 519, 523 (5th Cir.2006) (citing *Maryland v. Dyson*, 527 U.S. 465, 467 (1999)). "[T]he automobile exception does not have a separate exigency requirement: 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more.'" *Dyson*, 527 U.S. at 467 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940

(1996) (*per curiam*)). "[I]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825. Here, based on the plaintiff's brother's assertion, there was probable cause to believe that the vehicle contained contraband and the subsequent search of the vehicle and seizure of that contraband was justified.

### C. Arrest and Imprisonment

Plaintiff and his brother were arrested and charged with possession of drugs and paraphernalia and transported to the OPCC. Plaintiff further claimed that his brother admitted to having dropped the marijuana cigarette on the ground; and, that the bag of marijuana in the truck belonged to plaintiff's brother, and, that plaintiff had no knowledge of it. [Doc. 1, pp. 4-6] According to the affidavit of the brother, he advised the officers that the drugs belonged to him and that the plaintiff had no knowledge of their existence. [Doc. 1-2, p. 3]

It is upon these facts that plaintiff bases his assertion that the officers thereafter falsely arrested and imprisoned him. However, the mere fact that plaintiff's brother and traveling companion admitted to possessing contraband without his brother's knowledge is insufficient to establish a false arrest and imprisonment. In order to establish a Constitutionally false arrest, the plaintiff must demonstrate, among other things, that the complained of arrest was without probable cause. *Compare Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001), at fn. 7 *citing Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir.2000) and *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir.1988) ("Claims of false arrest, false imprisonment, and malicious prosecution involve the guarantees of the fourth and fourteenth amendments when the individual complains of an arrest, detention, and prosecution without probable cause."). Probable cause

exists when "the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir.1995).

Here, the facts admitted to by plaintiff and his brother establish that contraband was found inside the vehicle. Under the definition provided above, the officers clearly had the requisite probable cause to believe that plaintiff possessed the drugs in question notwithstanding the assertions of his brother. Possession need not be actual. "Constructive possession" is sufficient and it can be considered joint-possession along with co-perpetrators or defendants. "Constructive possession" exists when an individual knowingly has dominion and control, or has the power to exercise dominion and control, over the contraband in question, or if the individual has knowing dominion and control over a vehicle in which drugs are concealed. *United States v. Brito*, 136 F.3d 397, 411 (5th Cir. 1998)(citations omitted).

In other words, plaintiff has failed to state a claim for which relief may be granted with respect to his false arrest and imprisonment claims.

### *Conclusion and Recommendation*

Therefore, considering the foregoing

**IT IS RECOMMENDED** that plaintiff's civil rights complaint and his amended complaints be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim for which relief may be granted, and for seeking money damages against defendants who are immune from suit, pursuant to the provisions of 28 U.S.C. § 1915(e)(2). Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation

have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See,** *Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, September 26, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE